1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

RAUL GARCIA,

Petitioner,

v.

TIM GARRETT, et al.,

Respondents.

Case No. 3:22-cv-00332-ART-CSD

ORDER

9    This habeas matter is brought by Petitioner Raul Garcia under 28 U.S.C.
10   §2254. Respondents filed a Motion to Dismiss (ECF No. 20) the first amended
11   petition as untimely and unexhausted. Also before the Court is Respondents'
12   Motion to Seal (ECF No. 23). For the reasons discussed below, the Court grants
13   Respondents' motion to dismiss and their motion to seal.

14   **I.     Background**

15   In October 2000, Garcia was charged with one count of sexual assault on
16   a child under the age of fourteen for sexual penetration of A.K.G., a ten-year-old
17   girl, by putting his finger inside the victim's vagina; one count of lewdness with a
18   child under the age of fourteen years for pulling down the victim's pants and/or
19   underwear and touching the victim's vagina with his tongue; and one count of
20   lewdness with a child under the age of fourteen years for unzipping his pants and
21   pulling the hand of A.K.G toward his exposed penis in an attempt to get her to
22   touch his penis. ECF No. 21-7.

23   In March 2001, following a two-day jury trial, Garcia was convicted of one
24   count of sexual assault on a child under the age of fourteen and two counts of
25   lewdness with a child under the age of fourteen years. ECF No. 21-21. The state
26   court sentenced Garcia to an aggregate term of 40 years to life. *Id.* The Nevada
27   Supreme Court affirmed the conviction. ECF No. 21-37.

28   In July 2012, Garcia filed a *pro se* state postconviction habeas petition and

the state district court denied his habeas petition. ECF Nos. 22-6, 22-9. Garcia did not file an appeal. In September 2012, Garcia filed a second state postconviction habeas petition that was denied. ECF Nos. 22-13, 22-14. Garcia did not appeal the denial of his second state postconviction habeas petition.

In December 2019, Garcia filed a motion to correct an illegal sentence arguing that the consecutive sentence on Count 2, a lewdness count, was illegally imposed because it was redundant to the sexual assault. ECF No. 22-17. The state court construed Garcia's motion as a third state postconviction habeas petition and denied it as procedurally barred. ECF No. 22-32. On appeal, the Nevada Supreme Court found that the state court erred in construing his motion as a postconviction petition, but nonetheless found Garcia was not entitled to relief. ECF No. 22-50.

On July 25, 2022, Garcia initiated the instant federal habeas matter. ECF No. 1-1. Following the appointment of counsel, Garcia filed his first amended petition. ECF No. 17. Respondents move to dismiss the first amended petition as untimely and argue that Grounds 1, 2, 3 are untimely and unexhausted. ECF No. 20. Garcia acknowledges that the petition is untimely. He argues that Grounds 1, 2, and 3 should be considered technically exhausted, but procedurally defaulted. He further argues that he can overcome any procedural hurdles because he can demonstrate that he is actually innocent of the Count 2 lewdness charge on the basis that the Nevada Supreme Court narrowed the interpretation of the lewdness statute. ECF No. 25 at 2.

## II. Discussion

### a. Actual Innocence Legal Standard

A convincing showing of actual innocence may enable habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims. *Schlup v. Delo*, 513 U.S. 298, 314–16 (1995). "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the

impediment is a procedural bar [or] expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (citation omitted). "[I]f a petitioner ... presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316.

To demonstrate actual innocence, "a petitioner must show that, in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt'." *Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002) (quoting *Schlup*, 513 U.S. at 316). Put another way, "actual innocence" is established when, in light of all the evidence, "it is more likely than not that no reasonable juror would have convicted [the petitioner]." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup*, 513 U.S. at 327-28). The petitioner must establish factual innocence of the crime, and not mere legal insufficiency. *Id.*; *Jaramillo v. Stewart*, 340 F.3d 877, 882-83 (9th Cir. 2003).

"One way a petitioner can demonstrate actual innocence is to show in light of subsequent case law that he cannot, as a legal matter, have committed the alleged crime." *Vosgien v. Perrson*, 742 F.3d 1131, 1134 (9th Cir. 2014). In *Vosgien*, the Ninth Circuit held that a habeas petitioner convicted of several crimes, including "compelling prostitution" based on his acts of bribing his daughter to procure sexual favors for himself, could establish his actual innocence where the State conceded that, in light of state case law issued after his conviction interpreting the compelling prostitution statute to apply only to defendants who induced someone to engage in prostitution with third parties, the petitioner could not have committed the alleged crime of compelling prostitution based on the facts under which he was convicted. *See* 742 F.3d at 1136.

However, the Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare. *McQuiggin,* 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329); *House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met). This is a particularly exacting standard, one that will be satisfied "only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006). Indeed, cases where the actual innocence gateway standard has been satisfied have "typically involved dramatic new evidence of innocence." *Larsen v. Soto*, 742 F.3d 1083, 1096 (9th Cir. 2013).

### b. Subsequent Case Law

Garcia relies on *Gaxiola v. State*, 119 P.3d 1225, 1235 (Nev. 2005), asserting that he is actually innocent of Count 2, the lewdness count based on pulling down the victim's pants and/or underwear and touching the victim's vagina with his tongue, because the Nevada Supreme Court narrowed the interpretation of the lewdness statute. In *Gaxiola*, the Nevada Supreme Court held that, under NRS 201.230, the State was required to prove beyond a reasonable doubt that the lewdness was an act other than a sexual assault. The Nevada Supreme Court concluded that the State has the burden, at trial, to show that the lewdness was not incidental to the sexual assault. *Id*.

The State can establish that an act of lewdness is not incidental to a subsequent sexual assault, and obtain convictions for both crimes, by presenting evidence of an interruption between the two acts. *See, e.g., Townsend v. State*, 734 P.2d 705, 710 (1987) (where evidence indicated that the defendant stopped fondling the child's breasts before digitally penetrating her, the acts were separate and distinct); *Wright v. State*, 799 P.2d 548, 549-50 (1990) (where evidence indicated that defendant stopped an attempted sexual assault when a car passed and then resumed the sexual assault after the car was gone, the acts were separate and distinct).

When the State fails to present evidence of any interruption between an act

of lewdness and a subsequent sexual assault, a defendant may not be convicted of both crimes. *See, e.g., Crowley v. State*, 83 P.3d 282, 285-86 (2004) (reversing redundant lewdness conviction where there was no interruption between defendant's act of touching and rubbing the victim's penis and the subsequent fellatio); *Ebeling v. State*, 91 P.3d 599, 602 (2004) (reversing redundant lewdness conviction where defendant's act of rubbing his penis against victim's buttocks was incidental to penetration and not a separate act); *Gaxiola*, 119 P.3d at 1235 (reversing lewdness conviction where there was no "evidence regarding the sequence of events and under what circumstances the lewdness occurred. The child only indicated Gaxiola fondled the child's penis" and "did not indicate if this occurred on a separate day or time frame from the child's statement that Gaxiola placed the child's penis in Gaxiola's mouth").

### c. Evidence Presented at Trial

At trial, the victim, A.K.G, testified that she was in her room drawing on her bed when Garcia entered her room. ECF No. 21-14 at 30-33. He got on his knees on the floor, grabbed A.K.G.'s legs, and tried to pull her underwear and shorts down. *Id.* at 33. She tried to push him away and pull her shorts up. *Id.* at 33-34. Garcia held A.K.G.'s legs together with his knees and put his pointer finger in her private spot, which A.K.G. later identified as her vaginal area. *Id.* at 34-38. She testified that it hurt. *Id.* at 38.

After she pulled her shorts up and attempted to leave the room, Garcia got up and shut the door. *Id.* at 39-40. A.K.G. fell back onto her sister's bed that was in the same room and closest to the door, Garcia got on top of her and tried to kiss her on the mouth. *Id.* A.K.G. moved her head so that he could not kiss her. *Id.* at 41. Garcia stood up and A.K.G. tried to open the door, but Garcia closed it. *Id.* After closing the door, Garcia unzipped his pants, exposed his private parts, grabbed A.K.G.'s hand and tried to force A.K.G. to touch his penis. *Id.* at 42-43.

A.K.G. also testified as to Garcia's attempt to lick A.K.G.'s private spot that

occurred on the same day in A.K.G.'s room. *Id.* at 44. She testified that she thought he attempted to lick her private spot before the finger incident. *Id.* She testified that "he tried to pull my-my legs. He tried to go like this, and he tried to put his head in and started licking it." *Id.* at 45. On cross-examination, the defense questioned A.K.G about her testimony at the preliminary hearing and she testified that she did not remember saying that Garcia used his tongue after the finger incident. *Id.* at 72.

Garcia left A.K.G.'s room but returned. *Id.* at 48-49. A.K.G was in her closet when he returned, he grabbed her, and tried to pull her shorts down from behind. *Id.* A.K.G. pulled her shorts up and Garcia tried to push her head down. *Id.* at 53. During this incident in the closet, A.K.G.'s father entered the room. *Id.* at 54.

### d. Preliminary Hearing Testimony

At the preliminary hearing, A.K.G. testified that Garcia pulled her shorts and underwear down and put his finger in her private spot. ECF No. 21-4 at 13. When he stopped, she pulled her shorts back up. *Id.* at 14. Garcia then pulled her shorts back down and put his tongue on her private spot. *Id.*

### e. Analysis

In light of the totality of the evidence and applicable Nevada caselaw, the Court concludes that Garcia fails to make a sufficient showing of actual innocence. Garcia has not established that no reasonable juror, viewing the record as a whole, could have found him guilty of Count 2. Despite testifying that she "wasn't sure" if the licking incident happened before the finger incident, the victim child testified at trial that after Garcia pulled her shorts down, he held her legs together with his knees and put his pointer finger in her vagina. ECF No. 21-14 at 34-38, 73. She further testified at trial that during the licking incident, "[Garcia] tried to pull my-my legs. He tried to go like this, and he tried to put his head in and started licking it." *Id.* at 45. Based on this testimony, the jury could have appropriately convicted Garcia on the lewdness count and sexual assault

6

count by determining that the touching was separate and distinct as opposed to a continuous act merged with sexual assault. *See Gaxiola*, 119 P.3d at 1235.

In addition, the victim child's preliminary hearing testimony provides sufficient evidence of separateness such that a rational juror could reasonably find two separate crimes. Actual innocence review incorporates "*all evidence,*" including (i) evidence alleged to have been improperly admitted (but with due regard to its questionable reliability), (ii) evidence the defense did not present to the jury at trial, or (iii) evidence that became available only after the trial. *Griffin v. Johnson*, 350 F.3d 956, 961-63 (9th Cir. 2003) (citing *Schlup*, 513 U.S. at 327-28). Garcia has not shown that Nevada case law issued after his convictions rendered his conduct non-criminal. *See Vosgien*, 742 F.3d at 1134. The Court does not find that the record in this case contains "evidence of innocence so strong" that the Court cannot have confidence in the outcome of the state court proceeding. *Schlup*, 513 U.S. at 316. Garcia's gateway claim of actual innocence fails. Accordingly, the Court grants Respondents' motion to dismiss and the first amended petition is dismissed as untimely.

### III.    Motion to Seal

Respondents seek leave to file under seal two documents (ECF No. 23): Exhibit 20, Petitioner's Presentence Investigation Report ("PSI") and psychological and substance abuse evaluation (ECF No. 24-1). Under Nevada law, the PSI is "confidential and must not be made a part of any public record."  Nev. Rev. Stat. § 176.156(5).

Having reviewed and considered the matter in accordance with *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), and its progeny, the Court finds that a compelling need to protect the petitioner's safety, privacy, and/or personal identifying information outweighs the public interest in open access to court records. Accordingly, Respondents' motion to seal is granted, and Exhibit 20 is considered properly filed under seal.

**IV.    Certificate of Appealability**

Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.* Applying these standards, this Court finds that a certificate of appealability is unwarranted.

**V.    Conclusion**

It is therefore ordered that Respondents' Motion to Dismiss (ECF No. 20) is granted. The petition is dismissed with prejudice as untimely.

It is further ordered that a certificate of appealability is denied, as reasonable jurists would not find the district court's dismissal of the federal petition to be debatable or wrong, for the reasons discussed herein.

It is further ordered that Respondents' Motion to Seal (ECF No. 23) is granted. Exhibit 20 is considered properly filed under seal.

It is further ordered that the Clerk of the Court is instructed to enter final judgment accordingly and close this case.

Dated this 24th day of September 2024.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE